UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Oscar Lee Adams,

    Petitioner,

 vs.       REPORT AND RECOMMENDATION

Joan Fabian,

    Respondent.  Civ. No. 04-3442 (JMR/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon a Petition for a Writ of Habeas Corpus, see Title 28 U.S.C. §2254. The Petitioner appears pro se, and the Respondent appears by Richard L. Varco, Jr., Assistant Minnesota Attorney General. For reasons which follow, we recommend that the Petition for a Writ of Habeas Corpus be dismissed.[1]

---

[1]While the Petitioner requested an evidentiary Hearing, "in order to resolve conflicts in the evidence," see Docket No. 11, at unnumbered p. 11, he did not identify any evidentiary conflicts which would require the conduct of an evidentiary Hearing. Furthermore, based on our review of the Record, neither an evidentiary Hearing, nor oral argument, would contribute to the just, speedy, and inexpensive determination of

## II.  Facts and Procedural Background

The Plaintiff, who is a State prisoner, commenced this action under Title 28 U.S.C. §2254 alleging that the Respondent deprived him of thirty (30) days of good time credit, without affording him adequate due process.  The alleged deficiency was the failure of the Respondent to provide him with a timely notice of charges that were brought against him for an incident that occurred in February of 2001, while the Petitioner was incarcerated at the Minnesota Correctional Facility, in Stillwater, Minnesota.[2]

On February 22, 2001, the Petitioner was informed by prison staff that he would not be able to take a shower that evening.  The Petitioner became agitated, and apparently attempted to incite other inmates to demand showers, or flood the unit. The Petitioner was directed by prison staff to cease his behavior, but he purportedly refused, and was removed to a modified cell, and placed on quiet status. See Adams

_____

this action.  See Rule 1, Federal Rules of Civil Procedure; see also, Rule 8, Federal Rules Governing Section 2254 Cases in the United States District Courts. Accordingly, we decide the case based on the parties' written submissions.

[2]Apparently, the Petitioner has since been transferred to the Minnesota Correctional Facility, in Oak Park Heights, Minnesota.

v. Fabian, No. CX-03-1784 (Minn. Dist. Ct. 10th Dist., July 14, 2003)("Adams I"),

Docket No. 2, at unnumbered p. 12.

On February 23, 2001, the Petitioner received a Notice of Violation, that was

drafted by a prison official identified as T. Schmidt, which contained the following

factual allegation:

> At 1855 hours [the Petitioner] became upset that he didn't
> get a shower today because the hot water was shut off.  I
> explained that he couldn't get a shower because we still had
> phase one.  He said, "I'll just kick off a riot then."  At 1900
> hours [the Petitioner] began shaking his bars and yelling for
> the other flag offenders to demand their showers or flood
> the unit.  I gave him a direct order to cease his behavior.
> [The Petitioner] continued to incite the unit.

Docket No. 2, at unnumbered p. 1.

The Notice advised the Petitioner that he was being charged with violations of

Offender Disciplinary Regulation 20 for "disturbing others," Offender Disciplinary

Regulation 160 for "disobeying a direct order," and Offender Disciplinary Regulation

320 for "disorderly conduct."  It also listed six (6) witnesses who could be called to

testify at a Hearing concerning the alleged events that gave rise to the identified

charges.

On February 26, 2001, the Notice was Amended to reflect the accurate date of the alleged incident.[3]  The Notice was Amended again, on the day of the Hearing, to add a fourth charge of violating Offender Disciplinary Regulation 31 for "threatening others," which included a videotape as evidence.

A Hearing on the charges was conducted on February 27, 2001, at which time, the Petitioner was represented by legal counsel.  At the Hearing, counsel argued that the "threatening others" charge should be dismissed because the Petitioner had not been provided with notice of the charge twenty-four (24) hours prior to the Hearing. The official, who acted on behalf of the Respondent, argued against dismissal of the charge, and advised that he would not oppose any request by the Petitioner for a continuance.   The Petitioner, after consulting with his attorney, declined the Respondent's offer to continue the Hearing, and the Petitioner subsequently pled guilty to the charge of "threatening others," with an explanation.  The Respondent dropped the three remaining charges, and the Petitioner was sentenced to ninety (90) days in segregation.  As a result of the sentence, the Petitioner lost thirty (30) days of good

---

[3]The original Notice alleged that the incident occurred on February 23, 2001, rather than February 22, 2001.  See Docket No. 2, at unnumbered p. 1.

time credit.  See <u>Adams v. Fabian</u>, 2004 WL 885652, at *1 (Minn. App., April 27, 2004), pet. for review denied (Minn., July 20, 2003)("Adams II").

The Petitioner filed a Petition for Habeas Corpus, in the Minnesota State District Court for the Tenth Judicial District, on March 20, 2003, alleging that the Respondent subjected him to prison discipline, without procedural due process, by failing to provide him with sufficient notice to prepare for his Hearing on the amended charge. <u>Adams I</u>.  The District Court denied the Petition, finding that the Petitioner had effectively waived any "notice"-based due process claim by choosing to proceed with the Hearing, rather than requesting a continuance.  The Petitioner appealed the denial of his Petition to the Minnesota Court of Appeals, which affirmed the District Court. See <u>Adams II</u>.  The Minnesota Supreme  denied the Petitioner's Petition for Review on July 20, 2004.  There is no record that the Petitioner filed a Writ of Certiorari with the United States Supreme Court.

## III.  <u>Discussion</u>

A.     <u>Standard of Review</u>.  "[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  <u>Title 28 U.S.C. §2254(a)</u>.  "In conducting

habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68 (1991). As a result, before a Writ may issue, the Petitioner must establish that the State's exercise of custody over his person is an affront to the Constitution, a Federal law, or a Federal treaty. Id.; see also, Lupien v. Clarke, 403 F.3d 615, 618 (8th Cir. 2005); Newton v. Kemna, 354 F.3d 776, 782 (8th Cir. 2004); Robinson v. Leapley, 26 F.3d 826, 829 (8th Cir. 1994).

In 1996, Congress restricted the scope of a Federal Court's review of Habeas Petitions, where the underlying claims were adjudicated in State Court. See, Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996)("AEDPA"); see also, Lockyer v. Andrade, 538 U.S. 63, 70 (2003) ("AEDPA circumscribes a federal habeas court's review of a state court decision."). A Federal Court's authority to vitiate State Court decisions, by the granting of a Writ of Habeas Corpus, is now limited to the narrow class of claims which have been fully exhausted in the State Courts, and which involve an adjudication that either:

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

-6-

> (2)     resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the State Court proceeding.

Title 28 U.S.C. §2254(d).

In a recent Supreme Court decision, the Court explained that the "contrary to," and

"unreasonable application" clauses of Section 2254(d)(1), present two separate

grounds on which a Federal Court may grant Habeas relief to claims adjudicated in the

State Courts.  Williams v. Taylor, 529 U.S. 362 (2000).  The Court went on to instruct

as follows:

> Under the "contrary to" clause, a federal habeas court may
> grant the writ if the state court arrive[d] at a conclusion
> opposite to that reached by [the Supreme Court] on a
> question of law or if the state court decide[d] a case
> differently than [the Supreme Court] has on a set of
> materially indistinguishable facts.  Under the "unreasonable
> application" clause, a federal habeas court may grant the
> writ if the state court identifie[d] the correct governing legal
> principle from [the Supreme Court's] decisions but
> unreasonably applie[d] that principle to the facts of the
> prisoner's case.

Id. at 412-13.

The Court further explained that a consideration of a State Court's decision, under the

"unreasonable application" clause, requires a Federal Court to "ask whether the state

court's application of clearly established federal law was objectively unreasonable."

-7-

Id. at 409; see also, LaFrank v. Rowley, 340 F.3d 685, 689 (8th Cir. 2003), cert. denied, 541 U.S. 950 (2004).

Under this heightened standard of review, a Federal Court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly," but "[r]ather, that application must also be unreasonable." Id. at 411; see also, Siers v. Weber, 259 F.3d 969, 972-73 (8th Cir. 2001)(examining the impact of Williams on Habeas proceedings), cert. denied, 534 U.S. 1138 (2002); Newman v. Hopkins, 247 F.3d 848, 850-51 (8th Cir. 2001), cert. denied, 536 U.S. 915 (2002); Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000), cert. denied, 532 U.S. 1024 (2001).

As a consequence, Williams affirmed the distinction, which had previously been drawn by several Circuit Courts, that the "contrary to" clause was to be used in cases addressing pure questions of law and mixed questions of law and fact, whereas the "unreasonable application" clause addressed factual determinations.  See, Evans v. Rogerson, 223 F.3d 869, 872 (8th Cir. 2000)(the "in custody" determination for Miranda purposes is a question of law subject to the first prong of Section 2254(d), when the relevant facts are undisputed); Nunes v. Mueller, 350 F.3d 1045, 1051 (9th Cir. 2003)("Ineffective assistance claims are generally resolved under the first

standard, which controls both pure questions of law and mixed questions of law and fact, but the second standard applies to the extent a habeas petition challenges any factual determinations of the state court."), cert. denied, --- U.S. ---, 125 S.Ct. 808 (2004); see also, Davis v. Woodford, 333 F.3d 982, 990 (9th cir. 2003)("The first prong applies both to questions of law and to mixed questions of law and fact, Williams v. Taylor, 529 U.S. 362, 407-09 * * * (2001), while the second prong applies to decisions based on factual determinations, Miller-El v. Cockarell, 537 U.S. 322, 340 (2003)."). Therefore, when a petitioner argues that the State Court improperly applied clearly established Supreme Court law to a particular set of facts, the Federal Courts may not grant a Writ absent a finding that such an application was unreasonable.

Additionally, Section 2254(e)(1) retains a presumption of correctness for all purely factual determinations, which are rendered by a State Tribunal, and which can, as a result, only be rebutted by the production of clear and convincing evidence to the contrary. Despite this presumption, Section 2254(d)(2) authorizes the issuance of a Writ if the State Court Judgment "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Kinder v. Bowersox, 272 F.3d 532, 538 (8th Cir. 2001); McDonald v. Bowersox, 101 F.3d 588, 592 (8th Cir. 1996)("[W]e presume state court findings

of fact to be correct in habeas proceedings unless the petitioner establishes, the respondent admits, or the record shows otherwise."), cert. denied, 521 U.S. 1127 (1997).  Thus, "[f]actual findings by the state court 'shall be presumed to be correct,' a presumption that will be rebutted only 'by clear and convincing evidence.'" <u>Kinder v. Bowersox</u>, supra at 538, citing <u>Title 28 U.S.C. §2254(e)(1)</u>.

      B.   <u>Legal Analysis</u>.  Following a thorough review of the Record presented, we conclude that the decisions of the Minnesota Courts were neither contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court, nor were those decisions based upon an unreasonable determination of the facts.

      The Fifth Amendment, as applied to the States by the Fourteen Amendment, prohibits the State and Federal Governments from depriving a person of life, liberty, or property, without due process of law.  While it is true that the constitutional protections, which are encompassed by the Due Process Clause, do not abate at the time of imprisonment, see <u>Hudson v. Palmer</u>, 468 U.S. 517, 539 (1984)(O'Connor, J., concurring), it is also true that "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." <u>Sanding v. Conner</u>, 515 U.S. 472, 485

(1995), quoting <u>Jones v. North Carolina Prisoners' Labor Union, Inc.</u>, 433 U.S. 119, 125 (1977), quoting in turn, <u>Price v. Johnston</u>, 334 U.S. 266, 285 (1948).

Although prison disciplinary proceedings often implicate liberty interests, they are not criminal Trials, and therefore, they do not involve the full panoply of procedural and substantive protections that are available in criminal proceedings. See, <u>Wolff v. McDonnell</u>, 418 U.S. 539, 567-68 (1974). Nevertheless, in <u>Wolff</u>, the Supreme Court enumerated the minimum due process requirements of a prison disciplinary proceeding as follows:

>   1.    Written notice of the claimed violation must be given to the prisoner at least 24 hours prior to the Hearing;
>
>   2.    A written statement must be compiled by the factfinder describing the evidence relied upon and the reasons for the findings and disciplinary action;
>
>   3.    The prisoner should be permitted to call witnesses and to present evidence in defense of the charges, unless doing so would jeopardize institutional safety or correctional goals; and
>
>   4.    Where the inmate is illiterate, or the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or have adequate substitute aid in the form of help from the staff or from a sufficiently competent inmate designated by the staff.

Id. at 563-70.

Beyond these procedural due process considerations, the Supreme Court has determined that, in order to comply with constitutional due process, at least "some evidence" must support the finding of a disciplinary sanction.  See, Superintendent v. Hill, 472 U.S. 445, 455 (1985).  As explained by the Court:

> This standard is met if there is some evidence from which the conclusion of the administrative tribunal could be deduced.  * * *  Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

Id. at 455; see also, Goff v. Dailey, 991 F.2d 1437, 1440 (8th Cir. 1993).

Here, the Petitioner has alleged that the Respondent failed to provide him with sufficient advanced written notice of the charges against him.  His argument is based on the Respondent's failure to provide him with notice of the amended charge of "threatening others" at least twenty-four (24) hour in advance of the disciplinary Hearing.  The Respondent concedes that the Petitioner did not receive twenty-four (24) hours notice of that charge, but urges that there is no due process violation because the Petitioner had previously been advised of the factual basis for the charge,

and because the Petitioner declined to request a continuance, but rather, elected to go forward with the proceedings, and plead guilty to the alleged violation.

While it is true that the a prisoner must be afforded at least 24-hours notice, so as to prepare for a disciplinary Hearing, see, Wolff v. McDonnell, supra at 564("At least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the Adjustment Committee."), it is the factual allegations, rather than the precise charges, that are encompassed in the notice component of a prisoner's due process rights.  See e.g., Holt v. Caspari, 961 F.2d 1370, 1373 (8th Cir. 1992), cert. denied, 506 U.S. 865 (1992); Northern v. Hanks, 326 F.3d 909, 911 (7th Cir. 2003); Driver v. Hanks, --- Fed. Appx.---, 2005 WL 1395094 at *1 (7th Cir., June 2, 2005).

In Holt, a prison Adjustment Board found that the facts alleged against a prisoner comprised a more serious violation than that which had originally been charged, and held the prisoner accountable for the more serious infraction.  The prisoner brought a civil rights action against the prison officials, alleging that the Adjustment Board could not impose penalties upon him for the more serious charge, without first having provided him with notice and an opportunity to defend against that specific charge.  Our Court of Appeals disagreed, reasoning as follows:

-13-

> This court held in Jenson v. Satran, 651 F.2d 605, 607 (8th
> Cir. 1981) (per curiam) that  Wolff v. McDonnell does not
> require the infraction notice to specify whether the offense
> charged was serious or minor.   Here the charge was
> possession of Valium, and while a change from a Rule 24
> charge to a Rule 3 charge raised the potential penalties, the
> factual basis for both was possession of the same Valium
> at the same time.  It is evident that the conduct violation
> report gave [the Petitioner] all of the information he needed
> to make his defense.
>
> That the Adjustment Board considered the contraband to
> be sufficiently dangerous to warrant an increased penalty
> may have been to [the Petitioner's] detriment, but did not
> change the factual charge that had been made against him,
> namely possession of Valium.  Any defense he would assert
> would not differ because of the increase in the penalty.  The
> facts are set forth plainly and clearly, and a constitutional
> violation has not been charged.

Holt v. Caspari, supra at 1373; accord Northern v. Hanks, supra at 911(prisoner was

not deprived of his due process right to notice 24-hours in advance of a Hearing,

where the authority which reviewed the Adjustment Board's findings concluded that

the factual basis for the prisoner's charge supported a more serious conduct violation,

and modified the charge accordingly).

Based upon the analysis in Holt, we are satisfied that the Petitioner was provided

with sufficient notice to satisfy the due process requirements set forth in Wolff.

Specifically, the Notice of Violations, which was provided to the Petitioner on

-14-

February 23, 2001, advised him of the factual basis for the charges against him and, while a new charge was added on the day of the Hearing, the factual basis for the new charge was exactly the same as the other three charges.  Moreover, as emphasized by the Respondent, and the State Courts which reviewed the Petition, the Petitioner was provided with an opportunity to continue the Hearing, in order to prepare a defense to the new charge but, with the advice of counsel, he elected to proceed as scheduled. While the Petitioner's attorney, during the disciplinary Hearing, has described his right to request a continuance as a "Hobson's choice ," see Exhibit 2 to Petition, at p. 2 ¶7, Docket No. 2, since it could result in an indefinite period of delay before a Hearing could be rescheduled, the simple fact is that, if the Petitioner wanted more time to prepare his defense, it was available to him, and he declined that opportunity, and pled guilty to the newly charged offense.  Accordingly, we find that he waived any claim related to the timeliness of the notice.  See, Hamil v. Ferguson, 937 F. Supp. 1517, 1527-1528 (D. Wyo. 1996).[4]

---

[4]In Hamill v. Ferguson, 937 F. Supp. 1517, 1527-1528 (D. Wy. 1996), the petitioner brought a Habeas petition, which challenged the revocation of his parole, in part, on the failure of the respondent to provide him with a timely notice of the parole revocation Hearing.  The Court acknowledged that the notice was untimely, but denied the petitioner Habeas Corpus relief, based on the availability of a continuance.  The Court reasoned as follows:

Since the Petitioner's sole challenge to the deprivation of his good-time credit

is the Respondent's asserted failure to provide him with notice of the amended charge

---

> Regarding claim (3), the court finds the Wyoming Board of
> Parole did not violate [the petitioner's] Fourteenth
> Amendment rights when it served him with written notice on
> October 10, 1994, that his parole revocation hearing was
> scheduled for October 11, 1994. It is true that the notice
> was tardy, and that the failure to provide more timely notice
> is not to be encouraged. However, the respondents have
> submitted an affidavit from the Parole Board Coordinator,
> in which he avers that he met with [the petitioner] shortly
> before the October 11, 1994, hearing and advised him that
> "if he was not prepared to proceed with his revocation
> hearing or if he wanted time too [sic] consult with an
> attorney, he could waive the scheduled revocation hearing
> date and reschedule it at a later date." The Parole Board
> Coordinator also avers that if [the petitioner] had requested
> a continuance, his request would not have been construed
> as a waiver of his right to a revocation hearing or as an
> admission of guilt. In light of this affidavit, the court finds
> [the petitioner] was fully advised that he could have
> requested a continuance, that the Wyoming Board of Parole
> did nothing to mislead him regarding the availability or
> consequences of such a request, and that it was up to [the
> petitioner] whether to participate in the October 11, 1994,
> hearing despite his asserted lack of preparation or to seek
> a continuance. Having made his choice, [the petitioner]
> must now abide by the results.

at least twenty-four (24) hours in advance of the disciplinary Hearing and, because we find that the notice provided to the Petitioner was constitutionally sufficient, we recommend that his Petition for a Writ of Habeas Corpus be dismissed with prejudice. He draws no error of fact or law to our attention, which was committed by the Minnesota Courts, and our analysis demonstrates that no such error was committed such as to warrant the Habeas relief the Petitioner requests.

NOW, THEREFORE, It is  - -

RECOMMENDED:

That the Petition for a Writ of Habeas Corpus [Docket No. 1] be dismissed, with prejudice.

Dated: August 22, 2005                   s/Raymond L. Erickson
                                         Raymond L. Erickson
                                         UNITED STATES MAGISTRATE JUDGE

NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than September 9, 2005,** a writing which specifically identifies those portions of the

Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than September 9, 2005,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.